UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

A.H.,                                          )
                                               )
      Plaintiff,                           )
                                               )      Case No.: 2:26-cv-168
      v.                                   )
                                               )
NATHAN LINDGREN and                            )
MAGON LINDGREN,                                )
                                               )
      Defendants.                          )
_____ )

## **COMPLAINT**

Plaintiff, A.H., by and through her attorneys, Lynn, Lynn, Blackman & Toohey, P.C., complains as follows:

1.      Plaintiff A.H. is an individual who was a minor child at the time of the events giving rise to this action and is now an adult residing outside the State of Vermont.

2.      Defendant Nathan Lindgren is an individual who, at all relevant times, resided in Vermont.

3.      Defendant Magon Lindgren, formerly known as Magon Tanner, is an individual who owned, lived in and controlled the residence located at 66 Chelsey Road, Sheffield, Vermont, at the relevant time.

4.      At all times relevant to this matter, Ms. Lindgren was dating Mr. Lindgren, but were not yet married. At all times relevant to this matter, Ms. Lindgren and Mr. Lindgren lived separately. Since the matters referred to in this Complaint, the Lindgrens married.

5.     This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000, exclusive of interest and costs, and the parties are citizens of different states.

6.     Venue is proper in this district because the acts and omissions complained of occurred here.

7.     On or about March 8, 2014, Plaintiff was present at a gathering at a home located at 66 Chelsey Road in Sheffield, Vermont (the Home), a residence owned and controlled by Ms. Lindgren.

8.     At that time, Plaintiff was fourteen years old.

9.     Mr. Lindgren, Plaintiff's former basketball coach, was in a romantic relationship with Ms. Lindgren.  He would often spend the night at her home.  While at the Home, Lindgren was subject to the authority of Ms. Lindgren, the homeowner.

10.    On March 8, 2014, Plaintiff's mother entrusted Plaintiff to Ms. Lindgren's care for an overnight.  Ms. Lindgren earlier advised Plaintiff's mother that there would be a social gathering for young girls at her home.  When Plaintiff's mother left her at the Home for the overnight, Ms. Lindgren accepted the responsibility to care for Plaintiff for the duration of the overnight. The duty of care included to protect Plaintiff from foreseeable harm from other adults in the home, in particular sexual misconduct.

11.    During the course of the evening Mr. Lindgren consumed large quantities of alcohol sufficient to cause him to become intoxicated.  Ms. Lindgren was aware that Mr. Lindgren was intoxicated.  Further, the alcohol was stored in her home and likely had been purchased by Ms. Lindgren.

12.    During the overnight, Mr. Lindgren provided alcohol to Plaintiff , a 14 year old, in order to make her more susceptible to his planned inappropriate conduct. Plaintiff estimated that he gave her 4 or 5 cups of beer, an amount that would cause her to be under the influence of alcohol.  Ms. Lindgren was aware at the time that Mr. Lindgren was unlawfully providing alcohol to Plaintiff.

13.    Ms. Lindgren raised no objection, allowing Plaintiff to consume the alcohol.  Nor did Ms. Lindgren intervene with Mr. Lindgren, her then boyfriend, to stop his unlawful actions directed at Plaintiff.  If Ms. Lindgren had taken steps to stop the provision of alcohol, more likely than not the subsequent molestation of Plaintiff would not have occurred.

14.    Mr. Lindgren also behaved in a wholly inappropriate manner in his verbal interactions with Plaintiff during evening of March 8, 2014.  He asked Plaintiff if she was a virgin.  He then told Plaintiff that she could tell him anything because he could keep a secret.  The conversation was grooming behavior.  Ms. Lindgren knew or should have known of this conversation.  Ms. Lindgren should have removed Plaintiff from further interaction with Mr. Lindgren.

15.    On March 8, 2014, Ms. Lindgren was aware of a long history of inappropriate interactions between Mr. Lindgren and teenage girls, including Plaintiff.  Lindgren would ask the girls, including Plaintiff, to sit on his lap.  The girls would sit on his lap.  He would hug the girls, often too tightly and too closely.  Ms. Lindgren knew of that behavior at the time of Plaintiff's molestation by Mr. Lindgren.

16.    During the gathering at the Home, Mr. Lindgren invited Plaintiff to sit next to him on a loveseat.  He told Plaintiff that he wanted her to sit by him while they watched a movie.  He positioned himself so that he was touching Plaintiff on the loveseat.

17. Mr. Lindgren then placed a large blanket over his body and Plaintiff. The blanket covered his lower body, arms and chest. The blanket was positioned so that nobody could observe him if he reached over to Plaintiff and engaged in sexually assaultive behavior. Ms. Lindgren observed Plaintiff and Mr. Lindgren sitting on the couch under the blanket. She said and did nothing to stop Mr. Lindgren's clearly improper actions or to protect Plaintiff from the risk of harm.

18. Mr. Lindgren caused the lights in the Home to be turned off during the movie and while he was sitting on the loveseat with the blanket over him and Plaintiff.

19. Ms. Lindgren observed Plaintiff on the loveseat, with the lights out and the blanket over her and Mr. Lindgren. Ms. Lindgren knew or should have known that it was entirely inappropriate for an adult intoxicated male to engage in those behaviors with a 14 year old unrelated and intoxicated girl. She also knew or should have known that Plaintiff was exposed to the imminent risk of sexual assault from Mr. Lindgren given the totality of the circumstances. Ms. Lindgren should have taken action to prevent the harm that would later result.

20. Ms. Lindgren did not do anything when confronted with the inappropriate behaviors by Mr. Lindgren. Instead of separating him from Plaintiff, she went to bed, leaving Plaintiff on the couch and under the blanket with Mr. Lindgren. There were no other adults present, leaving Plaintiff under Mr. Lindgren's supervision and authority.

21. After Ms. Lindgren went to bed, Mr. Lindgren pulled Plaintiff's legs over his so that they were intertwined. He then put his hands down her shorts. He began to touch Plaintiff on her upper thighs and vagina. He also repeatedly touched her breasts. Plaintiff was shocked and panicked. She tried to move away from Mr. Lindgren, but he pulled her back toward him on the couch. When she tried to put her legs together to limit access to her thighs and vagina, Mr.

Lindgren pushed her legs apart so that he could continue to molest her.  When Plaintiff tried to put her hand in the way, Mr. Lindgren removed it.

22.     The molestation lasted for about one hour.  At the end of the hour, Mr. Lindgren told Plaintiff that he was sorry for touching her and this his behavior was inappropriate.  Plaintiff describes feeling terrified and wanting to cry when Mr. Lindgren molested her.

23.     Eventually, Mr. Lindgren moved away from Plaintiff.  Plaintiff spent the night at the Home.

24.     The next morning, March 9, 2014, Plaintiff was distraught.  She contacted her mother so that she could be brought home.  As she was preparing to leave, Mr. Lindgren approached her.  Mr. Lindgren acknowledged his misconduct from the night before.  He told her that he would never hurt her and then forced her to give him a hug.

25.     Plaintiff immediately disclosed to her mother what Mr. Lindgren had done to her.   The police were called.

26.     When confronted by law enforcement about the sexual assaultive behaviors, Ms. Lidngren said that Mr. Lindgren must have been sleeping.  She claimed he was grabby when he slept, indicating that she was aware that Mr. Lindgren had a history as someone who groped others.  It is unclear why Ms. Lindgren would allow Mr. Lindgren to sleep in the vicinity of underage teenage girls instead of joining her in the bedroom.

27.     Lindgren's conduct constitutes lewd and lascivious conduct with a child under Vermont law.  His conduct was childhood sexual abuse under 12 V.S.A. § 522.

28.     Plaintiff sustained serious, permanent and severe harm as a result of Defendants' conduct.

## COUNT I – ASSAULT AND BATTERY

29.     Plaintiff reasserts the earlier allegations as if fully set forth here.

30.     Mr. Lindgren intentionally engaged in harmful and offensive contact with Plaintiff without consent. Specifically, he touched her inner upper thighs, vagina and breasts.

31.     Plaintiff suffered damages as a direct and proximate result of this conduct.

## COUNT II – SEXUAL BATTERY

32.     Plaintiff reasserts the earlier allegations as if fully set forth here.

33.     Mr. Lindgren's conduct constituted sexual battery under Vermont common law and statutory principles.

34.     Plaintiff suffered severe emotional and other compensable harm as a direct and proximate result of Mr. Lindgren's misconduct.

## COUNT III – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

35.     Plaintiff reasserts the earlier allegations as if fully set forth here.

36.     Defendant Lindgren's conduct was extreme and outrageous. Mr. Lindgren's misconduct was directed at Plaintiff.

37.     Mr. Lindgren knew or recklessly disregarded the high probability that emotional distress would result.

38.     Plaintiff sustained severe emotional distress as a direct and proximate result of Mr. Lindgren's actions.

## COUNT IV –GROSS NEGLIGENCE

39.     Plaintiff reasserts the earlier allegations as if fully set forth here.

40.     Ms. Lindgren owed a duty to Plaintiff while on the premises to maintain the property in a reasonably safe condition and to protect them from foreseeable harm.

41.     Ms. Lindgren knew or should have known of Mr. Lindgren's presence, access to Plaintiff, and the unreasonable risk he posed.  She was, among other things, aware that Mr.

Lindgren had been drinking, had supplied alcohol to Plaintiff, was sitting too close to Plaintiff, was under a blanket with Plaintiff, that Mr. Lindgren had a history of inappropriate behavior with young teenage girls and that Mr. Lindgren was behaving improperly.

42.     Ms. Lindgren breached her duty to protect Plaintiff from the harm that occurred by permitting the circumstances under which Plaintiff was harmed. The evidence supporting a foreseeable risk of harm was so great that the breach constitutes gross negligence.

43.     Plaintiff's injuries were a foreseeable, direct and proximate result of these breaches.

44.     Plaintiff suffered severe and permanent harm as a result of Ms. Lindgren's gross negligence.

## COUNT V – NEGLIGENT SUPERVISION / FAILURE TO WARN

45.     Plaintiff reasserts the earlier allegations as if fully set forth here.

46.     Ms. Lindgren accepted responsibility for Plaintiff when Plaintiff's mother left her with Ms. Lindgren at the Home.  Ms. Lindgren had a duty to adequately supervise, control, protect against or warn about Mr. Lindgren as a part of her duty owed to Plaintiff. The facts establish that Mr. Lindgren presented a clear and foreseeable risk to minor guests.  Her actions and inaction constitutes gross negligence.

47.     Ms. Lindgren took on responsibility to protect Plaintiff from reasonably foreseeable harm.  She failed to protect Plaintiff from the foreseeable harm presented by Mr. Lindgren.

48.     Plaintiff suffered damages as a direct and proximate result of Ms. Lindgren's gross negligence.

Wherefore, Plaintiff seeks the following relief:

1.   Compensatory and punitive damages;

2.   Prejudgment interest;

3.   Attorney's fees and costs; and

4.   All other relief that the court deems just and equitable.

## Jury Demand

Plaintiff demands trial by jury.

DATED at Burlington, Vermont, this 18th day of May, 2026.

A.H.

By:   */s/ Pietro J. Lynn*  
Pietro J. Lynn, Esq.  
Lynn, Lynn, Blackman & Toohey, P.C.  
*Attorneys for Plaintiff*  
76 St. Paul Street, Suite 400  
Burlington, VT 05401  
802-860-1500  
plynn@lynnlawvt.com